United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE L. KIRBYSON,<br><br>                Plaintiff,<br><br>        v.<br><br>TESORO REFINING AND MARKETING<br>COMPANY; UNITED STEEL WORKERS,<br>INTERNATIONAL UNION LOCAL 5, and<br>DOES 1 through 200, inclusive,<br><br>                Defendants. | Case No. 09-3990 SC<br><br>ORDER RE DEFENDANTS'<br>MOTIONS FOR SUMMARY<br>JUDGMENT, OR IN THE<br>ALTERNATIVE, SUMMARY<br>ADJUDICATION |

## I.   **INTRODUCTION**

Before the Court are two motions for summary judgment, or in the alternative, summary adjudication, filed by Defendant United Steel Workers, International Union Local 5 ("the USW") and Defendant Tesoro Refining and Marketing Company ("Tesoro") (collectively, "Defendants").  ECF Nos. 73 ("USW Mot."), 75 ("Tesoro Mot.").  Both motions are fully briefed.  ECF Nos. 76 ("Opp'n to USW Mot."), 78 ("Opp'n to Tesoro Mot."), 83 ("USW Reply"), 86 ("Tesoro Reply").  For the following reasons, the Court GRANTS the USW's Motion and GRANTS IN PART and DENIES IN PART Tesoro's Motion.

///

///

**United States District Court**
For the Northern District of California

## II.   <u>BACKGROUND</u>

This case involves Tesoro's termination of Plaintiff's employment and the USW's subsequent handling of Plaintiff's grievance against Tesoro.  Unless otherwise noted, the following facts are undisputed.

Plaintiff joined the U.S. Air Force ("USAF") in 1994, and transitioned into the Air Force Reserve in 1999.  Second Hewitt Decl. ¶ 3 Ex. A ("Second Kirbyson Decl.") ¶ 2.[1]  Plaintiff worked as an oil refinery operator for Tesoro.  <u>Id.</u>  On January 5, 2005, Plaintiff was recalled to active duty, and Tesoro placed him on a military leave of absence.  <u>Id.</u> ¶ 4.  While serving in Iraq, Plaintiff developed pain in his left foot and was diagnosed with Achilles tendinitis.  <u>Id.</u> ¶ 6.  He underwent surgeries for this condition in January 2006 and August 2007.  <u>Id.</u>  In 2008, while still on active duty with the USAF, Plaintiff began experiencing discomfort in the soles of both feet and was diagnosed with plantar fasciitis.  <u>Id.</u> ¶ 7.  In October 2008, Plaintiff received notice from the USAF that he would be medically retired the following month due to his disabilities.  <u>Id.</u> ¶ 8.  He notified Tesoro of his desire to return to work at the refinery.  <u>Id.</u>

### A.   <u>Plaintiff's Termination by Tesoro</u>

On October 27, 2008, Plaintiff had a visit with Larry Angel ("Angel"), a physician's assistant at Tesoro's Medical Department.  <u>Id.</u> ¶ 10. The visit lasted no more than thirty minutes.  <u>Id.</u>

---

[1] Shanan L. Hewitt ("Hewitt"), attorney for Plaintiff, filed declarations in support of Plaintiff's Opposition to the USW's Motion, ECF No. 77 ("First Hewitt Decl."), and in support of Plaintiff's Opposition to Tesoro's Motion, ECF No. 79 ("Second Hewitt Decl.").  To each of her declarations, Hewitt attached declarations from Plaintiff, which the Court refers to respectively as "First Kirbyson Decl." and "Second Kirbyson Decl."

**United States District Court**
For the Northern District of California

1   Plaintiff and Angel discussed the evolution of Plaintiff's foot

2   condition during his military service.  According to Plaintiff,

3   Plaintiff informed Angel that his Achilles tendinitis had been

4   ongoing for quite some time, but he had only recently developed

5   plantar fasciitis.  Id. ¶ 11.  He informed Angel that he was

6   undergoing treatment with a podiatrist for his plantar fasciitis

7   and did not yet know the prognosis for that condition.  Id.

8   Plaintiff informed Angel that, although he could perform the daily

9   duties of his previous position as an operator, he would not feel

10  comfortable in that position because he could not run if an

11  emergency situation arose.  Id.

12      The parties dispute exactly what took place during Plaintiff's

13  visit with Angel.  According to Plaintiff, the visit with Angel did

14  not include a physical examination, only a discussion.  Id. ¶ 13.

15  Angel did not touch Plaintiff's foot or ask him to demonstrate any

16  movements.  Id.  Angel never asked Plaintiff about his specific

17  limitations such as the amount and duration of his ability to walk,

18  stand, climb, or squat.  Id.  Angel's notes from the visit

19  indicated that Plaintiff had ninety degrees dorsiflex in his left

20  foot, but Angel later acknowledged during deposition that this

21  dorsiflex measurement could not have been accurate and that his

22  notes should have stated ten degrees.  Second Hewitt Decl. Ex. B

23  ("Angel Dep.") at 36:12-23.  According to Plaintiff, Angel informed

24  Plaintiff that he would need to submit to a full physical

25  examination because he had been away from work for so long.  Second

26  Kirbyson Decl. ¶ 13.  Plaintiff agreed, but he was never contacted

27  to arrange a physical exam.  Id.  At the conclusion of the visit,

28  Plaintiff told Angel that he did not yet have the findings from the

USAF Medical Evaluation Board regarding his injuries but would

forward them to Angel when he received them.  Id. ¶ 11.  According

to Plaintiff, Angel informed Plaintiff during the visit that he did

not think Tesoro would accommodate Plaintiff.  Id. ¶ 14.

    On October 31, 2008, Plaintiff received his military

retirement paperwork and faxed it to Angel.  Id. ¶ 15.  The

documentation indicated the USAF's findings that Plaintiff was non-

deployable based on his foot condition.  Kirbyson Dep. at 217:17-

25, 218:1-25, Ex. 18 ("USAF Med. Eval.").[2]  The "remarks" section

of the document stated that Plaintiff was limited to "no running,

climbing, or standing for long periods of time."  Id.  Although

Angel admitted that he did not know what the USAF meant by "no

standing for long periods of time," he concluded that it meant

Plaintiff could not stand for more than ten minutes in a given

hour.  Angel Dep. at 65:5-15.  Plaintiff declared that Angel's

conclusion was not accurate.  Second Kirbyson Decl. ¶ 17.  Angel

did not confer with Plaintiff or his physician about the

conclusion.  Angel Dep. at 71:12-25, 72:1-23.  According to

Plaintiff's treating physician at the time, Dr. Jessi Tunguyen-

Conner, Plaintiff could perform normal daily activities such as

walking and standing subject only to Plaintiff monitoring his own

comfort level.  Second Hewitt Decl. ¶ 5 ("Tunguyen-Conner Decl.") ¶

5.[3]  Plaintiff declared that at the time of his military

_____

[2] Both Tesoro and the USW have filed excerpts of Plaintiff
Kirbyson's January 12, 2011, deposition as attachments to
declarations of their respective counsels.  For the sake of
simplicity, the Court cites all references to this deposition
simply as "Kirbyson Dep."

[3] Tesoro objects to ¶¶ 5-7 of Tunguyen-Conner's declaration on
relevance grounds.  Tesoro argues that Dr. Tunguyen-Conner's
conclusions regarding Plaintiff's physical limitations in 2008 are
irrelevant because Dr. Tunguyen-Conner stated in her deposition
that she had not treated Plaintiff for nine months as of November
2008, and her opinion was based on Plaintiff's representations to

United States District Court
For the Northern District of California

retirement, he was capable of standing continuously for intervals of approximately forty-five minutes each if allowed to sit for "a few minutes" between intervals.  Second Kirbyson Decl. ¶ 18.[4] Plaintiff learned during discovery that Tesoro had a "Statement of Impairment" form that could be completed by an employee's treating physician to provide detailed information regarding the employee's physical limitations, such as the precise number of minutes at a time the employee could walk or stand, but Tesoro did not provide the form to Plaintiff or his treating physician.  Id. ¶ 13; Second Hewitt Decl. ¶ 6 Ex. D.

Aside from his meeting with Angel, Plaintiff had only one other meeting with a Tesoro representative prior to being terminated.  Id. ¶ 19.  This meeting took place on November 12, 2008, when Plaintiff and Plaintiff's union representative, Steve Rojek ("Rojek"), met with Tesoro's Human Resources representative, Diane Daniels ("Daniels").  Id.  The meeting lasted approximately twenty minutes.  Id.  During this meeting, Daniels asked Plaintiff what he thought he could do at the company.  Id. ¶ 20.  Plaintiff presented Daniels with two job postings he had found on Tesoro's

her about his condition.  Tesoro Reply at 8.  The Court finds that this does not render her opinion irrelevant, as it is still probative of Plaintiff's physical limitations at the time of his termination.  The Court OVERRULES Tesoro's objection.

[4] Tesoro objects to ¶¶ 18 and 20 of Plaintiff's declaration on the grounds that they contain statements that "are irrelevant, lack foundation, and constitute inadmissible speculation and improper opinion testimony."  Tesoro Reply at 5 n.3.  The only specific explanation Tesoro gives for these objections is that Plaintiff's statements regarding his current physical restrictions are irrelevant to an analysis of Plaintiff's physical restrictions in fall 2008, the relevant time period for this lawsuit.  The Court agrees and does not rely on Plaintiff's statements about his current physical limitations.  The Court finds the rest of the paragraphs to be admissible and OVERRULES Tesoro's objections to the extent they address statements other than those related to Plaintiff's current physical condition.

5

United States District Court
For the Northern District of California

internal website that he believed he was qualified and physically able to perform: lab analyst and training coordinator.  _Id._ Daniels requested that Plaintiff provide her with his college transcripts, which he later faxed to her.  _Id._  According to Plaintiff, Daniels did not inform Plaintiff of any job openings or anticipated job openings at this meeting, nor did she discuss with Plaintiff any accommodations that might enable him to continue working with the company.  _Id._ ¶¶ 21, 25, 26.

On November 20, 2008, Tesoro Human Resources Manager Rick Rios ("Rios") wrote to Daniels, stating, "[y]ou will have to tell [Plaintiff] we currently do not have any opening/jobs that he can perform with or without accommodation.  You should tell him we looked into the lab too.  Find out from [the corporate office in San Antonio] how best to move him out of the organization."  Second Hewitt Decl. Ex. X ("Rios Email").  Daniels responded that she was still looking at two positions – training coordinator and labor custodian II.  _Id._  Rios replied "OK, the training coord[inator] position is an interesting possibility."  _Id._

After Plaintiff's November 12, 2008 meeting with Daniels, Tesoro did not contact Plaintiff for approximately five weeks. Second Kirbyson Decl. ¶ 22.  During this period, Plaintiff telephoned Daniels on several occasions.  _Id._ ¶ 23.  Each time, Daniels informed Plaintiff that she had no further news for him. _Id._  On December 22, 2008, Daniels telephoned Plaintiff and informed him that his employment with the company had been terminated.  _Id._[5]

---

[5] Upon learning of his termination, Plaintiff filed a claim with the U.S. Department of Labor ("DOL") requesting an investigation of Tesoro's compliance with the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 _et_

**United States District Court**
For the Northern District of California

**B.**   **Plaintiff's Union Grievance**

Plaintiff was a member of the USW.  First Kirbyson Decl. ¶ 4.
Tesoro was, and currently is, signatory to a Collective Bargaining
Agreement ("CBA") with the USW, which governed the terms and
conditions of Plaintiff's employment with Tesoro.  Id.; USW Mot. at
3.  The CBA contains a multi-step procedure for resolving employee
grievances.  See Hillman Decl. ¶ 2 Ex. 1 ("CBA") § 6.016.[6]
First, grievances shall be presented to the employee's supervisor
or foreman.  Id. § 6.016(a).  If the grievance is not resolved by
the foreman or supervisor, it may then be presented to a grievance
committee.  Id. § 6.016(c).  If not resolved by the committee, the
USW may request arbitration of the dispute by two arbitrators --
one selected by Tesoro and one by the USW.  Id. § 6.016(d).
Lastly, if the grievance is not settled by these arbitrators within
ninety days of the arbitration request, it must be submitted to a
third arbitrator chosen from the American Arbitrator's Association.
Id.

Upon learning of his termination, Plaintiff contacted Rojek,
his union representative at the USW, and asked that a grievance be
filed regarding his termination.  First Kirbyson Decl. ¶ 15.  The
USW filed the grievance on December 29, 2008.  Hillman Decl. ¶ 4
Ex. 3.  On the same day, Plaintiff contacted Rojek and was informed
that the grievance had been filed but that it would not be
immediately processed because the USW was preparing to enter

---

seq.  Second Kirbyson Decl. ¶ 32.  On February 9, 2009, the DOL
sent Plaintiff a letter stating its findings.  Id.  Tesoro objects
to the DOL findings as inadmissible hearsay.  The Court does not
rely on the DOL findings in reaching its decision and therefore
does not rule upon Tesoro's objection.

[6] Kristina L. Hillman ("Hillman"), attorney for the USW, filed a
declaration in support of the USW's Motion.  ECF No. 74.

1   contract negotiations with Tesoro.  First Kirbyson Decl. ¶ 16; USW

2   Mot. at 4.  On January 6, 2009, Plaintiff contacted the USW

3   Secretary and Treasurer Jeff Clark ("Clark") about his grievance.

4   First Kirbyson Decl. ¶ 17.  Clark reiterated to Plaintiff that the

5   USW's contract negotiations with Tesoro would be its top priority

6   until completed.  Id.; USW Mot. at 5.

7       On January 26, 2009, Plaintiff again inquired about the status

8   of his grievance.  First Kirbyson Decl. ¶ 19.  Clark informed

9   Plaintiff that his grievance had been denied at the first step and

10  that nothing more was likely to happen regarding the grievance

11  until after contract negotiations were completed.  Hillman Decl. ¶

12  7 Ex. 6 ("Clark email").  Plaintiff contends that he telephoned

13  both Clark and Rojek sometime in February 2009 but neither had

14  updates about the status of his grievance.  First Kirbyson Decl. ¶

15  20.  Plaintiff had no further communications with the USW about his

16  grievance before filing this action on August 28, 2009.  Kirbyson

17  Dep. at 351:9-13, 352:4-12, 363:16-19.  Plaintiff contends that the

18  USW failed to pursue the matter any further until prompted to do so

19  by this litigation.  Opp'n to USW Mot. at 9.  The USW contends that

20  it continued to pursue Plaintiff's grievance by, among other

21  things, engaging in an unsuccessful step two meeting with Tesoro

22  and requesting arbitration of the grievance in April 2009.  USW

23  Mot. at 5-6.

24      In April 2009, Plaintiff was offered a job as a maintenance

25  supervisor with the Sacramento Regional Transit District.  Kirbyson

26  Dep. at 291:21-25; 294:13-17.  He accepted the offer and began

27  working for the District on July 1, 2009.  Id.

28      On August 20, 2009, Tesoro sent a letter to Plaintiff's

counsel offering Plaintiff the position of cost control specialist,

subject to Plaintiff providing documentation that he had completed
his bachelor's degree and was physically able to meet the demands
of the mostly sedentary position.   Chamberlin Decl. ¶ 2 Ex. A.
Plaintiff's counsel responded on September 8, 2009, stating that
Plaintiff had already obtained other employment and that Plaintiff
had filed a lawsuit against Tesoro.   Id. ¶ 3 Ex. B.

On August 28, 2009, Plaintiff commenced this action against
Tesoro, the USW, and several employees of Tesoro and the USW ("the
individual defendants").   See ECF No. 1 ("Compl.").   On December 3,
2009, Plaintiff filed a First Amended Complaint.   ECF No. 15
("FAC").   On March 2, 2010, the Court granted a motion to dismiss
filed by the individual defendants and granted in part a motion to
dismiss filed by Tesoro.   ECF No. 32 ("Mar. 2, 2010 Order").
Plaintiff filed a Second Amended Complaint on March 30, 2010.   ECF
No. 41 ("SAC").   In his SAC, Plaintiff only asserts claims against
Tesoro and the USW; he does not assert claims against the
individual defendants.   Id.   On June 10, 2010, the Court denied
Tesoro's motion to dismiss the SAC.   ECF No. 52 ("June 10, 2010
Order").   On July 12, 2010, the Court granted in part the USW's
motion for judgment on the pleadings.   ECF No. 56 ("July 12, 2010
Order").   The Court granted judgment on the pleadings in favor of
the USW on Plaintiff's claims for violation of the Americans with
Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and violation
of California Military and Veterans Code § 389.   Id.   The Court
denied the motion with respect to Plaintiff's claim for violation
of the duty of fair representation.   Id.

In light of the Court's July 12, 2010 Order, Plaintiff's only
remaining claim against the USW is his claim for breach of the duty
of fair representation.   Id.   All six of Plaintiff's claims against

United States District Court
For the Northern District of California

1 Tesoro remain, namely: (1) violation of the Uniformed Services

2 Employment and Reemployment Rights Act of 1994 ("USERRA"), 38

3 U.S.C. § 4301 et seq; (2) violation of the ADA; (3) violation of

4 California's Fair Employment and Housing Act ("FEHA"), California

5 Government Code § 12900 et seq.; (4) wrongful termination in

6 violation of public policy; (5) violation of the California

7 Military and Veterans Code § 389 et seq.; and (6) breach of

8 contract.  See SAC.

9     Both Tesoro and the USW now move for summary judgment, or in

10 the alternative, summary adjudication.

11

12 **III.  <u>LEGAL STANDARD</u>**

13     "The standards and procedures for granting partial

14 summary judgment, also known as summary adjudication, are the

15 same as those for summary judgment." <u>Mora v. Chem-Tronics,</u>

16 <u>Inc.</u>, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).  Entry of

17 summary judgment is proper "if the pleadings, the discovery

18 and disclosure materials on file, and any affidavits show that

19 there is no genuine issue as to any material fact and that the

20 movant is entitled to judgment as a matter of law."  Fed. R.

21 Civ. P. 56(c).  The movant bears the initial burden of

22 demonstrating the absence of a genuine issue of fact.  <u>See</u>

23 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  To

24 survive a motion for summary judgment, the responding party

25 must present competent evidence that creates a genuine issue

26 of material fact.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477

27 U.S. 242, 248-52 (1986).  "The evidence of the nonmovant is to

28 be believed, and all justifiable inferences are to be drawn in

his favor."  <u>Id.</u> at 255.

**United States District Court**
For the Northern District of California

1

2    IV.   **DISCUSSION**

3          A.    **The USW's Motion**

4          In his only remaining claim against the USW, Plaintiff alleges

5    that the USW breached its duty of fair representation by "failing

6    to pursue Plaintiff's grievance in violation of the [CBA] and

7    processing Plaintiff's grievance in a perfunctory manner."  SAC ¶

8    47.  Plaintiff alleges that the USW's actions were "arbitrary,

9    discriminatory, and/or in bad faith."  Id. ¶ 48.  The USW moves for

10   summary judgment on the grounds that Plaintiff has failed to

11   present evidence that (1) his claim was timely filed or (2) the USW

12   engaged in arbitrary, discriminatory, or bad faith conduct.[7]  USW

13   Mot. at 2.

14          1.    Duty of Fair Representation Framework

15          The duty of fair representation encompasses a labor union's

16   "statutory obligation to serve the interests of all members without

17   hostility or discrimination toward any, to exercise its discretion

18   with complete good faith and honesty, and to avoid arbitrary

19   conduct."  Vaca v. Sipes, 386 U.S. 171, 177 (1967).  A union's

20   discretion is very broad under the duty of fair representation

21   doctrine; the "Supreme Court has long recognized that unions must

22   retain wide discretion to act in what they perceive to be their

23   members' best interests."  Peterson v. Kennedy, 771 F.2d 1244, 1253

24   (9th Cir. 1985).  "[C]ourts should afford substantial deference to

25   a union's decisions" regarding "whether and to what extent it will

26   ───────────────

27   [7] Plaintiff objects to certain portions of the declaration of Jeff
     Clark filed in support of the USW's Motion on the grounds that the
     portions are hearsay statements inadmissible under Federal Rule of

28   Evidence 801.  The USW does not respond to the Plaintiff's
     objections.  The Court does not rely on any of the contested
     statements in reaching its decision and therefore does not address
     Plaintiff's objections.

11

pursue a particular grievance." <u>Id.</u> (internal quotation omitted).

A two-step analysis must be applied to determine whether a union's conduct breached its duty of fair representation.  First, a determination must be made whether the alleged misconduct was procedural or ministerial in nature, or whether it involved the union's judgment.  If the conduct is procedural or ministerial in nature, then a plaintiff must establish that the conduct was arbitrary, discriminatory, or in bad faith in order to show that the union breached its duty.  <u>Wellman v. Writers Guild of Am., West, Inc.</u>, 146 F.3d 666, 670 (9th Cir. 1998).  On the other hand, if the conduct involved the exercise of judgment by the union, then a plaintiff must show the conduct was discriminatory or in bad faith; showing that the union's conduct was arbitrary will not suffice.  <u>Id.</u>

A union's decision about how to best handle a grievance is generally a matter of judgment, as is its decision to not take a grievance to arbitration.  <u>Id.</u> at 671.  But, to be sure that the union is employing some principled way of screening the meritorious grievances from the meritless ones, the Ninth Circuit has held that "a union must conduct some minimal investigation of grievances brought to its attention."  <u>Id.</u> (internal citation omitted).  Consequently, when a union member brings a meritorious grievance, the union's decision to ignore that grievance or to process it in a perfunctory manner is considered a ministerial action that breaches the union's duty if it is arbitrary, discriminatory, or performed in bad faith.  <u>Id.</u>  Nevertheless, a court reviewing a union's conduct will not find that the union has exercised its duties perfunctorily unless it has treated the union member's claim so lightly as to suggest an "egregious disregard" of her rights.  <u>Id.</u>

12

1  (internal citation omitted).

2          2.    The Handling of Plaintiff's Grievance

3        As an initial matter, the Court must determine whether the

4  USW's handling of Plaintiff's grievance was an act of judgment or a

5  ministerial act.  Wellman, 146 F.3d at 670.  The USW argues that

6  its conduct was a matter of judgment and therefore subject to

7  review for bad faith or discrimination only.  Plaintiff does not

8  explicitly address the ministerial/judgmental dichotomy but appears

9  to argue that the USW's conduct was a ministerial act; Plaintiff

10 points to no evidence of bad faith or discrimination and argues

11 only that the USW handled his grievance in an arbitrary fashion.

12 See Opp'n to USW Mot. at 7, 9.

13       Under Wellman, USW's handling of the grievance was an act of

14 judgment so long as the union satisfied its duty to "conduct some

15 minimal investigation" and did not treat Plaintiff's claim "so

16 lightly as to suggest an egregious disregard" of Plaintiff's

17 rights.  146 F.3d at 671.  The undisputed evidence shows that: (1)

18 the USW timely filed Plaintiff's grievance with Tesoro, Kirbyson

19 Dep. 332:12-23; (2) Rojek met with Tesoro's human resources

20 representative in an attempt to return Plaintiff to a position at

21 Tesoro that he could perform despite his medical restrictions,

22 First Kirbyson Decl. ¶ 10; (3) the USW communicated with Plaintiff

23 on multiple occasions regarding the status of his grievance between

24 December 2008 and February 2009, Kirbyson Decl. ¶¶ 16, 17, 19, 20;

25 and (4) the USW participated in a two-party arbitration meeting

26 with Tesoro regarding Plaintiff's grievance on May 5, 2009, Second

27 Hewitt Decl. Ex. F ("McCormack Letter") at 2.  As Plaintiff notes,

28 the evidence also shows that the USW: (1) did not communicate with

Plaintiff regarding his grievance for approximately six months from

United States District Court
For the Northern District of California

February 2009 to the filing of this lawsuit on August 28, 2009, Kirbyson Decl. ¶ 20;[8] (2) did not request any information or documentation from Plaintiff in order to pursue his grievance, Kirbyson Decl. ¶ 18; and (3) failed to timely request third-party arbitration after the two-party arbitration meeting held on May 5, 2009 proved unsuccessful, McCormack Letter at 2.

Although the USW's pursuit of Plaintiff's grievance was not as zealous as it could have been, the USW's conduct does not rise to the level of egregious disregard for Plaintiff's rights, and the USW did not fail to conduct a minimal investigation. Therefore, the USW's handling of Plaintiff's grievance was an exercise of judgment by the union, not a ministerial act. Accordingly, to defeat the USW's Motion, Plaintiff must produce evidence sufficient to create a triable issue of fact that the USW engaged in discriminatory or bad faith conduct.

When examining a union's act of judgment, a plaintiff seeking to prove discriminatory conduct on the part of the union must present "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am.

---

[8] Plaintiff relies on Robesky v. Qantas Empire Airways, Ltd., 573 F.2d 1082, 1089 (9th Cir. 1978) to argue that the USW's failure to communicate with him after February 2009 amounts to a breach of the USW's duty. This reliance is misplaced. In Robesky, the plaintiff alleged that her union breached its duty of fair representation by negotiating a settlement of her claim against her employer and withdrawing her grievance from arbitration as a condition of the settlement without informing her. Id. at 1087. The trial court entered judgment in favor of the union, finding no evidence of discrimination or bad faith by the union. Id. at 1086. The Ninth Circuit held the trial court applied the wrong standard when assessing the union's conduct, holding that the union should be held liable even if its conduct was merely arbitrary. Id. Robesky does not compel a different conclusion in this case; the union's failure to communicate with the plaintiff in that case was much more egregious than the facts at issue here.

14

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  v. Lockridge, 403 U.S. 274, 301 (1971) (internal quotations

2  omitted).  A plaintiff seeking to prove bad faith on the part of

3  the union must introduce "substantial evidence of fraud, deceitful

4  action or dishonest conduct" on the part of the union.  Id. at 299.

5       Here, Plaintiff points to no evidence of bad faith or

6  discriminatory conduct by the USW and the Court finds none.

7  Plaintiff's central complaints are that the union did not update

8  him on the status of his grievance between February and August of

9  2009, did not ask him for documentation about his grievance, and

10 did not timely request third-party arbitration.  Even when viewed

11 in the light most favorable to Plaintiff, none of the evidence

12 suggests that the USW acted in a discriminatory way that was

13 "intentional, severe, and unrelated to legitimate union objectives"

14 or that the USW engaged in "fraud, deceitful action, or dishonest

15 conduct."  Id. at 301.  Accordingly, the Court grants summary

16 judgment in favor of the USW on Plaintiff's claim for breach of the

17 duty of fair representation.[9]

18   **B.   Tesoro's Motion**

19      Plaintiff asserts six claims against Tesoro: (1) violation of

20 the USERRA; (2) violation of the ADA; (3) violation of the FEHA;

21 (4) wrongful termination in violation of public policy; (5)

22 violation of the California Military and Veterans Code § 389; and

23 (6) breach of contract.  See SAC.  Tesoro moves for summary

24 adjudication of all six claims.  Tesoro also moves for summary

25 adjudication of Plaintiff's demand for punitive damages and forward

26 pay.

27      As an initial matter, Plaintiff does not oppose Tesoro's

28

---

[9] The Court does not reach the USW's argument that Plaintiff's
claim is barred by the statute of limitations.

United States District Court
For the Northern District of California

Motion with regard to Plaintiff's claim for violation of California
Military and Veterans Code § 389.  Opp'n to Tesoro Mot. at 1 n.1.
The Court therefore GRANTS summary adjudication of this claim in
favor of Tesoro.

       1.   ADA and FEHA claims

Plaintiff alleges that Tesoro discriminated against him on the
basis of his disability in violation of the ADA and its California
analog, the FEHA.  He further alleges that Tesoro violated the ADA
and FEHA by failing to engage in an interactive process to find
reasonable accommodations for his disability.  Tesoro argues that
the evidence adduced during discovery is insufficient to create a
genuine issue of material fact as to these claims.

       a.   Discrimination Claims

The ADA and FEHA prohibit covered employers from
discriminating against employees on the basis of a physical or
mental disability.  See 42 U.S.C. § 12101 et seq.; Cal. Gov. Code §
12900 et seq.  Both statutes prohibit employers from terminating a
disabled employee because of the employee's disability if
reasonable accommodation is possible without undue hardship to the
employer.[10]  Id.

The ADA prohibits an employer from discriminating "against a
qualified individual with a disability because of the disability."
42 U.S.C. § 12112(a).  Thus, to establish a prima facie case under
the ADA, Plaintiff "must show that (1) [he] is a disabled person

---

[10] "[T]he FEHA provisions relating to disability discrimination are
based on the ADA," and courts typically examine claims under these
statutes in conjunction with one another. See Humphrey v. Mem'l
Hosps. Ass'n, 239 F.3d 1128, 1133 n.6 (9th Cir. 2001).
Accordingly, the Court examines Plaintiff's state and federal
disability claims together, relying on federal authority in the
absence of contrary or differing state law.  Id.

**United States District Court**
For the Northern District of California

within the meaning of the ADA; (2) [he] is a qualified individual, meaning [he] can perform the essential functions of [his] job; and (3) [Tesoro] terminated [him] because of [his] disability."[11]  <u>Nunes v. Wal-Mart Stores, Inc.</u>, 164 F.3d 1243, 1246 (9th Cir. 1999).  The ADA further defines the second prong of the prima facie case, "qualified individual with a disability," as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); <u>see also</u> 29 C.F.R. § 1630.2(m).  To prove that he is a "qualified individual under the statute, Plaintiff must show (1) that a reasonable accommodation existed that would have enabled him to perform the essential functions of his former position, or (2) that he possessed the necessary qualifications and physical ability to perform another vacant position with the employer.  <u>Zukle v. Regents of Univ. of California</u>, 166 F.3d 1041, 1046-47 (9th Cir. 1999); <u>Nadaf-Rahrov v. The Neiman Marcus Group, Inc.</u>, 166 Cal. App. 4th 952, 963 (2008).

Tesoro argues that Plaintiff has failed to create a triable issue of fact as to whether he was able to perform the essential functions of his former position as an operator or any other vacant position, with or without accommodation.  Tesoro Mot. at 11. Plaintiff concedes that he could not perform the duties of his former position as an operator, even with reasonable accommodations, but argues that he was qualified and physically able to perform the duties of at least three other vacant positions

---

[11] Tesoro does not challenge Plaintiff's disabled status or the allegation that Plaintiff was terminated due to his disability. Thus, the issue is whether Tesoro failed to make reasonable accommodation for Plaintiff as a disabled individual.

at the refinery: lab analyst, training coordinator, and custodian II. Opp'n to Tesoro Mot. at 17. Viewing the evidence in the light most favorable to Plaintiff, as it must, the Court finds that Plaintiff has adduced sufficient evidence to withstand summary judgment on this issue.

Based on Angel's assessment of Plaintiff's physical limitations and a review of the functional activities of each position, Tesoro concluded that Plaintiff was physically unable to perform the essential functions of the custodian II, lab analyst, and training coordinator positions. Daniels Decl. ¶¶ 11, 13, 15. Tesoro further concluded that the seniority provisions of the CBA precluded Tesoro from offering Plaintiff the lab analyst position because a more senior employee had bid for the position, and that Plaintiff lacked the requisite experience to qualify for the training coordinator position. Daniels Decl. ¶¶ 13, 15.

A review of the evidence reveals several genuine issues of material fact as to whether Plaintiff was in fact qualified for and physically able to perform the essential functions of vacant positions at Tesoro. Issues of fact exist as to whether Tesoro's assessment of Plaintiff's physical limitations was accurate, and if not, whether a more accurate assessment would have revealed that reasonable accommodations for Plaintiff's disability were possible.

Tesoro's determination that Plaintiff was physically unable to perform the duties of the vacant positions was based in large part on Angel's assessment of Plaintiff's restrictions. Daniels Decl. ¶ 9. Viewed in the light most favorable to Plaintiff, the evidence suggests that Angel's assessment was based largely on the USAF's determination that Plaintiff's limitations included "no running, climbing, or standing for long periods of time." Angel did not

**United States District Court**
For the Northern District of California

1   perform a physical examination of Plaintiff and did not inquire

2   into the precise amounts of time that Plaintiff was able to walk or

3   stand.  First Kirbyson Decl. ¶ 12.  Rather, Angel assumed,

4   mistakenly according to Plaintiff, that Plaintiff was incapable of

5   standing for more than ten minutes per hour.  Angel Dep. at 65:5-

6   15.  Assuming the truth of Plaintiff's testimony, as the Court

7   must, Plaintiff was capable of standing for between four and five-

8   times longer than Angel concluded.  Second Kirbyson Decl. ¶ 17.

9        Additionally, according to Plaintiff, Tesoro did not accept

10  Plaintiff's repeated offers to provide additional information.  Id.

11  ¶ 16.  Although Tesoro had a "Health Professional's Statement of

12  Impairment of Lower Extremities and/or Ambulation" form that could

13  be completed by an employee's treating physician to obtain

14  information about the employee's specific limitations, it did not

15  provide this form to Plaintiff prior to his termination.  Id. ¶ 13;

16  Second Hewitt Decl. ¶ 6 Ex. D ("Statement of Impairment").  This

17  form asks physicians to provide information about, inter alia, the

18  maximum number of minutes or hours at a time that the disabled

19  employee can stand, walk, or climb stairs.  Statement of Impairment

20  at 1.  According to Plaintiff's treating physician, none of the

21  requirements for the lab analyst or training coordinator positions

22  would violate Plaintiff's permanent restrictions.  Tunguyen-Conner

23  Decl. ¶ 6.  Viewed in the light most favorable to Plaintiff, the

24  evidence suggests that Tesoro's decisions, such as its

25  determination that Plaintiff could not fulfill the lab analyst

26  requirement of "frequently mov[ing] from side to side and mov[ing]

27  around the lab," or the custodian II requirement of being able to

28  walk and stand for long periods of time, may have been based on

United States District Court
For the Northern District of California

incomplete and misinterpreted information.[12]   McCormack Decl. ¶ 8.

Additionally, viewing the evidence in the light most favorable to Plaintiff, a triable issue of fact exists as to whether a temporary leave of absence might have served as a reasonable accommodation that would have enabled Plaintiff's foot to heal substantially.  See Humphrey, 239 F.3d at 1135 ("A leave of absence may be a reasonable accommodation under the ADA.")  Plaintiff informed Angel that his plantar fasciitis was a recent development for which he was currently undergoing treatment and did not yet have a long-term prognosis.  Second Kirbyson Decl. ¶ 11.  Again, despite Plaintiff's offers to provide more information, Tesoro did not request information from Plaintiff's treating physician as to whether his condition might improve in the near future and did not discuss with Plaintiff whether a temporary leave of absence might provide a reasonable accommodation.  Id. ¶¶ 13, 23, 28.

The evidence further reveals a triable issue of fact as to whether Tesoro was precluded by seniority issues from offering Plaintiff the lab analyst position, as Plaintiff has produced evidence that an employee with less seniority than Plaintiff was awarded the position just two days after Plaintiff was terminated.

---

[12] Tesoro forcefully argues that it was Plaintiff who provided the USAF assessment and that it was Plaintiff's obligation to provide more accurate information to Tesoro if Plaintiff disagreed with Tesoro's assessments of his physical limitations.  See, e.g., Tesoro Reply at 1, 8 (citing Rund v. Charter Comm'cs, Inc., No. S-05-00502, 2007 U.S. Dist. LEXIS 19707, at *27-28 (E.D. Cal. Mar. 20, 2007)).  However, according to Plaintiff, it was not the USAF's evaluation that he disputed but rather Angel's interpretation of the evaluation.  For example, Plaintiff did not know until this litigation that Angel had interpreted the USAF's remarks to mean that Plaintiff could not stand for more than ten minutes per hour.  Second Kirbyson Decl. ¶ 17.  Additionally, here, unlike in Rund, Plaintiff declared that he repeatedly offered to provide Tesoro with more information about his condition prior to his termination, but his offers were denied.  Second Kirbyson Decl. ¶ 16.

United States District Court
For the Northern District of California

1   Second Hewitt Decl. Ex. I ("Daniels Dep.") at 152:6-25, 153:1-13.

2        In light of the existence of genuine issues of material fact,

3   the Court DENIES summary adjudication of Plaintiff's FEHA and ADA

4   discrimination claims.

5                    b.   <u>Interactive Process</u>

6        Both the ADA and the FEHA require employers to engage in a

7   good faith interactive process with disabled employees in an effort

8   to determine whether reasonable accommodation of the employee's

9   disability is possible.  "Once an employer becomes aware of the

10  need for accommodation, that employer has a mandatory obligation

11  under the ADA to engage in an interactive process with the employee

12  to identify and implement appropriate reasonable accommodations."

13  <u>Humphrey</u>, 239 F.3d at 1137; <u>see also</u> Cal. Gov. Code § 12940(n).[13]

14  "The interactive process requires communication and good-faith

15  exploration of possible accommodations between employers and

16  individual employees, and neither side can delay or obstruct the

17  process.  Employers, who fail to engage in the interactive process

18  in good faith, face liability for the remedies imposed by the

19  statute if a reasonable accommodation would have been possible."[14]

20  _____

21  [13] Section 12940(n) of the California Government Code makes it
    unlawful for an employer "to fail to engage in a timely, good
22  faith, interactive process with the employee or applicant to
    determine effective reasonable accommodations, if any, in response
23  to a request for reasonable accommodation by an employee or
    applicant with a known physical or mental disability. . . ."

24  [14] Under the ADA, an employee may only prevail on a claim for
    failure to engage in the interactive process if he or she first
25  establishes that a reasonable accommodation would in fact have been
    possible.  California courts are divided on whether FEHA imposes
26  the same requirement or whether employers may be liable under FEHA
    for failure to engage in the interactive process regardless of
27  whether a reasonable accommodation was in fact possible.  <u>Compare</u>
    <u>Nadaf-Rahrov v. The Neiman Marcus Group, Inc.</u>, 166 Cal. App. 4th
28  952, 977 (2008), <u>with</u> <u>Wysinger v. Automobile Club of Southern</u>
    <u>California</u>.  This split in California authority does not affect the
    Court's ruling on Tesoro's motion because the Court finds a genuine

                                 21

**United States District Court**
For the Northern District of California

1   Id. (internal quotations omitted).

2       ADA regulations require the employer to "[c]onsult with the

3   individual with a disability to ascertain the precise job-related

4   limitations imposed by the individual's disability and how those

5   limitations could be overcome with a reasonable accommodation."  29

6   C.F.R. Pt. 1630, App. § 1630.9; see also Barnett v. U.S. Air, Inc.,

7   228 F.3d 1105, 1114 (9th Cir. 2000).  The regulations further

8   require that the employer, "[i]n consultation with the individual

9   to be accommodated, identify potential accommodations and assess

10  the effectiveness each would have in enabling the individual to

11  perform the essential functions of the position."  Id.  Triable

12  issues of fact exist as to whether Tesoro fulfilled these

13  requirements.

14      First, triable issues of fact exist as to whether Tesoro

15  adequately consulted with Plaintiff to ascertain his precise job-

16  related limitations.  As explained above, Plaintiff's evidence

17  suggests that Angel's determination of Plaintiff's limitations was

18  based primarily on the general remarks of the USAF evaluation

19  rather than a thorough inquiry into Plaintiff's "precise job-

20  related limitations."

21      Second, according to Plaintiff's evidence, Tesoro did not

22  identify and discuss with Plaintiff any possible accommodations for

23  his disability.  Second Kirbyson Decl. ¶¶ 25-26.  Tesoro did not

24  present any vacant positions to Plaintiff or discuss with Plaintiff

25  possible accommodations that might allow him to perform the

26  essential functions of those positions.  Id.  Rather, it was

27  Plaintiff who identified the open positions of lab analyst and

28

issue of fact as to whether reasonable accommodation of Plaintiff's
disability was possible.

United States District Court
For the Northern District of California

training coordinator and presented them to Tesoro as possibilities.
Id. at ¶ 20.  While Tesoro's evidence suggests that it did in fact
consider other positions, the purpose of the interactive process
requirement is to incentivize a "cooperative dialogue."  Barnett,
228 F.3d at 1115.  Plaintiff's evidence suggests that little
dialogue took place in this case.  Plaintiff had two brief meetings
with Tesoro representatives -- one with Angel and one with Daniels.
Kirbyson Decl. ¶¶ 10, 19.  Tesoro then conducted an internal review
of possible accommodations and proceeded to inform Plaintiff that
it had determined no accommodations were possible.  Id. ¶¶ 26, 28;
Daniels Decl. ¶¶ 11-14.  In Barnett, the Ninth Circuit found that
U.S. Air failed to engage in an adequate interactive process when
it rejected three accommodations proposed by the Plaintiff and
offered no alternatives.  Id. at 1116.  Similarly here, Plaintiff's
evidence creates a triable issue as to whether Tesoro rejected
Plaintiff's proposed accommodations and offered no practical
alternatives in response.

In light of these numerous issues of material fact, the Court
DENIES summary adjudication of Plaintiff's FEHA and ADA interactive
process claims.

                    2.  USERRA claim

The USERRA was enacted to "prohibit employment discrimination
on the basis of military service" and to provide "prompt
reemployment" to individuals engaged in non-career military
service.  Coffman v. Chugach Support Servs., Inc., 411 F.3d 1231,
1234 (11th Cir. 2005) (citing 38 U.S.C. § 4301).  The Act provides
that veterans returning from military service shall not be denied
reemployment or any benefit of employment by their employer because
of their military service.  38 U.S.C. § 4311(a).  The USERRA

further requires an employer to reemploy a former employee returning from military service of more than ninety days in the position that he or she would have naturally attained (or a position of similar seniority, pay, and duties) if not for the interruption of his or her employment, unless the employee is not qualified for such a position. 38 U.S.C. § 4313(a)(2)(A)-(B). If the employee is not qualified for such a position because of a disability incurred in, or aggravated during, military service, then the employer "must make reasonable efforts to accommodate that disability and to help the employee become qualified to perform the duties of his or her reemployment position." 20 C.F.R. § 1002.225. If, despite the employer's reasonable efforts, the employee is still not qualified to perform the duties of the reemployment position, then the employer is not required to reemploy him or her. 20 C.F.R. 1002.226(a).[15]

A service member who is reemployed upon returning from service, and who was employed for more than 180 days before departing for service, may not be discharged without cause for one year. 38 U.S.C. § 4316(c)(1). Service members returning from a period of service more than 180 days long generally must notify their employer of their intent to return to work within ninety days -- if the service member is convalescing from a service-related disability, then this notice period is extended for up to two years. 38 U.S.C. § 4312(e).

---

[15] Title 20 section 1002.226(a) of the Code of Federal Regulations states: "USERRA requires that the employee be qualified for the reemployment position regardless of any disability. The employer must make reasonable efforts to help the employee to become qualified to perform the duties of this position. The employer is not required to reemploy the employee on his or her return from service if he or she cannot, after reasonable efforts by the employer, qualify for the appropriate reemployment position."

**United States District Court**
For the Northern District of California

In his SAC, Plaintiff alleges that Tesoro violated the USERRA by discriminating against him on the basis of "his disability and/or military service."  SAC ¶ 33.  Plaintiff has apparently abandoned his theory that Tesoro discriminated against him on the basis of his military service.  As noted above, Plaintiff does not oppose summary adjudication of his claim for discrimination based on military service under California Military and Veterans Code § 389, and Plaintiff does not argue in his Opposition that Tesoro discriminated against him on the basis of his military services.  Rather, Plaintiff argues that Tesoro violated USERRA regulations by failing to make reasonable efforts to accommodate his disability.  Opp'n to Tesoro Mot. at 22.[16]

As explained above, the Court finds that there is a triable issue of fact as to whether Tesoro failed to reasonably accommodate Plaintiff's disability.  Thus, the Court DENIES Tesoro's Motion with regard to Plaintiff's claims for disability discrimination under the USERRA.

> 3.  <u>Wrongful Termination in Violation of Public Policy</u>

Tesoro argues that summary judgment should be granted on Plaintiff's wrongful termination claim for the same reasons as his ADA and FEHA claims, namely, that Plaintiff failed to create a triable issue of fact as to the existence of reasonable

---

[16] In his Opposition, Plaintiff also argues that Tesoro violated § 4312(e) of the USERRA, which provides that service members convalescing from an injury have up to two years to notify their former employer of their desire for reemployment.  Opp'n to Tesoro Mot. at 21.  Plaintiff construes this section of the statute as requiring Tesoro to wait two years to see if Plaintiff's disability improves before terminating Plaintiff and thus contends that Tesoro violated this provision by terminating him approximately one month after his return from service.  Opp'n to Tesoro Mot. at 22. Because the Court finds that genuine issues of material fact as to Plaintiff's disability discrimination allegations preclude granting summary judgment in favor of Tesoro on Plaintiff's USERRA claim, the Court does not reach this argument.

accommodations for his disability.  Tesoro Mot. at 10.  As outlined

above, the Court finds that a triable issue of fact exists as to

whether Plaintiff has met his burden on this issue.  Thus, the

Court finds that summary adjudication of Plaintiff's wrongful

termination claim is not warranted and DENIES Tesoro's Motion with

regard to this claim.

### 4.   Breach of Contract

Plaintiff alleges that Tesoro breached the CBA by terminating

him without just cause and violating the CBA's seniority

provisions.  SAC ¶ 60.  Tesoro argues that Plaintiff's breach of

contract claim is derivative of his other discrimination claims and

therefore "fails for those same reasons."  Tesoro Mot. at 23.

Because the Court finds that Plaintiff has created a genuine issue

of material fact as to his discrimination claims, the Court

likewise finds a triable issue of fact as to whether Tesoro's

actions breached the seniority and just cause provisions of the

CBA.  The Court therefore DENIES Tesoro's Motion as to this claim.

### 5.   Plaintiff's Demand for Punitive Damages

Plaintiff seeks punitive damages from Tesoro.  SAC at 14.

Tesoro argues that Plaintiff has failed to create a triable issue

that Tesoro acted with "malice, oppression, or fraud" and therefore

cannot recover punitive damages as a matter of law.  Tesoro Mot. at

24.  In response, Plaintiff argues that Rios's email instructing

Daniels to "find out . . . how best to move [Plaintiff] out of the

organization," along with the "totality of circumstances" of the

case, are sufficient to withstand summary judgment as to the

availability of punitive damages.  Opp'n to Tesoro Mot. at 24.

As an initial matter, the Court notes that Tesoro relies on

the California standard for punitive damages, which provides that a

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  plaintiff may only recover punitive damages upon a showing by clear

2  and convincing evidence that the defendant is guilty of

3  "oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  While

4  this standard governs the availability of punitive damages for

5  Plaintiff's state law claims, the standard for availability of

6  punitive damages for violation of the ADA, as set forth in 42

7  U.S.C. § 1981a, is different.  Section 1981a provides that a

8  plaintiff in an ADA intentional discrimination suit may recover

9  punitive damages if he or she demonstrates that his or her employer

10  engaged in a discriminatory practice "with malice or with reckless

11  indifference to [the plaintiff's] federally protected rights."  42

12  U.S.C. § 1981a(b)(1).  See 42 U.S.C. § 1981a.  According to the

13  U.S. Supreme Court, the terms "malice" or "reckless indifference"

14  in § 1981a pertain to the employer's knowledge that it may be

15  acting in violation of federal law.  Kolstad v. ADA, 527 U.S. 526,

16  535 (1999).

17       In support of his punitive damages demand, Plaintiff points to

18  the email exchange between Tesoro Human Resources Manager Rios and

19  Human Resources representative Daniels.  Opp'n to Tesoro Mot. at

20  24.  Plaintiff argues that Rios's statement that Daniels should

21  "[f]ind out from [the corporate office in San Antonio] how best to

22  move [Plaintiff] out of the organization" could lead a reasonable

23  jury to impose punitive damages.  See Rios email.  However, when

24  the entirety of the email exchange is considered, Plaintiff's

25  argument fails.  Daniels responded to Rios that she was still

26  looking at two other positions – training coordinator and custodian

27  II.  Id.  Rios replied: "OK, the training coord[inator] position is

28  an interesting possibility."  Id.  The full exchange, considered as

a whole, suggests that Rios and Daniels were actively considering

27

United States District Court
For the Northern District of California

1  whether they could accommodate Plaintiff's disability.  The

2  exchange does not support a reasonable inference that Rios and

3  Daniels were acting with knowledge that they may be violating

4  federal law.

5      Plaintiff points to no other evidence in support of its

6  punitive damages claim, noting instead that the "totality of the

7  circumstances" warrant punitive damages.  It is not the Court's

8  task to "scour the record in search of a genuine issue of triable

9  fact" where counsel has not highlighted the evidence creating one.

10  Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996).  Because it

11  finds no evidence that could lead a reasonable jury to conclude

12  that Tesoro acted with malice or reckless indifference to

13  Plaintiff's rights, the Court GRANTS Tesoro's Motion with regard to

14  Plaintiff's demand for punitive damages.

15          6.   Plaintiff's Demand for Recovery of Future Wages

16      Plaintiff seeks to recover compensatory damages including lost

17  future wages and fringe benefits.  SAC at 14.  Tesoro argues that

18  Plaintiff's rejection of Tesoro's employment offer on the eve of

19  this litigation precludes recovery of such "front pay" as a matter

20  of law.  Tesoro Mot. at 23.  In response, Plaintiff argues first

21  that damages issues are not appropriate for consideration on

22  summary judgment.  Second, Plaintiff argues that Tesoro's offer of

23  employment was not truly an "offer" because it was subject to

24  Plaintiff completing his bachelor's degree, which he had not yet

25  completed at the time.  Opp'n to Tesoro Mot. at 25.

26      Plaintiff's unsupported contention that damages issues may not

27  be resolved on summary judgment is incorrect.  See, e.g., Caudle v.

28  Bristow Optical Co., 224 F.3d 1014, 1022 (9th Cir. 2000) (affirming

district court's grant of summary judgment as to employer's

**United States District Court**
For the Northern District of California

1   liability for back pay past a certain date where plaintiff failed

2   to mitigate damages).  However, the Court finds merit in

3   Plaintiff's argument that Tesoro's offer does not insulate it from

4   liability for front pay because Plaintiff was incapable of

5   accepting the offer.  Tesoro seeks to avail itself of the principle

6   set forth in Ford Motor Co. v. Equal Emp't Opportunity Comm'n, 458

7   U.S. 219, 241 (1982), that "absent special circumstances," an

8   employer's potential liability for lost wages ceases to accrue at

9   the time the claimant rejects an employer's unconditional offer of

10  either the same job as, or one "substantially equivalent" to, the

11  job from which the claim arose.  Tesoro's reliance on Ford Motor is

12  misplaced.  Implicit in the Ford Motor principle is the assumption

13  that the employer's offer is one that the employee is capable of

14  accepting.  Here, it is undisputed that Tesoro's offer was

15  contingent upon Plaintiff providing proof that he had attained a

16  bachelor's degree.  McCormack ¶ 13.  Plaintiff was incapable of

17  meeting this requirement because he had not yet obtained his

18  degree.  Opp'n to Tesoro Mot. at 25.  The Court therefore rejects

19  Tesoro's contention that, as a matter of law, Plaintiff is

20  precluded from seeking front pay by virtue of having rejected

21  Tesoro's August 20, 2009 offer of reemployment.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

    ///

United States District Court
For the Northern District of California

**V.    CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the Motion for Summary Judgment, or in the alternative, Summary Adjudication, filed by Defendant Tesoro Refining and Marketing Company.  The Court GRANTS the Motion with respect to Plaintiff George Kirbyson's sixth claim for violation of California Military and Veterans Code § 389 and with respect to Plaintiff's demand for punitive damages.  The Court DENIES the Motion with respect to Plaintiff's claims for violation of the Uniformed Services Employment and Reemployment Rights Act, violation of the Americans with Disabilities Act, violation of California's Fair Employment and Housing act, wrongful termination in violation of public policy, and breach of contract.

For the reasons stated above, the Court GRANTS the Motion for Summary Judgment filed by Defendant United Steel Workers, Local 5.

All parties shall appear for the pretrial conference on November 18, 2011, at 10:00 a.m. in Courtroom 1, on the 17th floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102.


IT IS SO ORDERED.


Dated:  June 17, 2011

UNITED STATES DISTRICT JUDGE

30